Barker v. Clark.

SAMUEL F. BARKER versus JOSEPH S. CLARK.

If the indorser of a note has changed his place of residence between the making of the note and the maturity of the same, the holder is bound to ascertain the new residence of the indorser, to which notice of non-payment should be sent, or to use all reasonable efforts to ascertain where it is.

Inquiries in such case are to be made at the former place of residence of the indorser; and those inquiries, and the answers thereto, are facts to be laid before a jury to prove diligence in the holder.

THIS was an action against the defendant as indorser of a promissory note, dated at Calais, May 5, 1835, for $35, signed by P. H. Glover and Billings Blake, and payable to the defendant or order, in one year from date, and interest, and indorsed by the defendant and one Wm. H. Griffith.

From the report of the case by SHEPLEY J. who tried the cause, it appeared by the testimony of Wm. H. Nute, that the plaintiff gave him the note in suit on the day of its maturity, and requested him to demand payment of the makers, and to notify the indorsers; that in pursuance of such request, he called at each of the houses of the makers of the note, and they being absent, informed their wives of his object in calling; that the plaintiff then wrote a letter to Clark, informing him of the demand and non-payment of the note, sealed the same, and delivered it to the witness; that he then went to Milltown, and inquired for the residence of the defendant, among other places at the house of the second indorser, Griffith, and was directed to a certain house where he called and inquired for him (the defendant); that he was informed that he had gone to St. John, to work on the bridge; that the same day he directed the letter to the defendant, at St. John, and put it in the Calais postoffice; that he was directed to Clark's residence by strangers, and except from their information he did not know that he ever lived there; and that when he called at his house, those who gave him the information of the absence of Clark were likewise persons with whom he was unacquainted, and that he did not recollect whether or not he inquired if Clark had left any agent, or had any place of business there.

There was other evidence tending to show that the defendant removed from Calais to New Brunswick, after the signing and before the maturity of the note, and that while residing at Calais he sometimes worked as a millwright there, and sometimes at St. Stephens.

The defendant insisted that due diligence had not been shown to notify him, and that he was discharged. The presiding Judge submitted the question of diligence to the jury, who returned a verdict for the plaintiff.

*T. J. D. Fuller,* for the defendant. This is a question not of fact but of law ; no facts being contested. *Hussey* v. *Freeman,* 10 Mass. R. 84 ; *Whitwell* v. *Johnson,* 17 Mass. R. 449. The indorsers' liability being conditional, every fact necessary to establish it must be shown by the plaintiff. *Green* v. *Darling,* 15 Maine R. 143. Clark residing in Milltown, notice should have been left at his place of residence in that place. If he had ceased to reside there, diligence should have been used to ascertain his place of residence, and notice should have been sent there. There is no proof where he resided, nor of any diligence used to ascertain the place of his residence. *Green* v. *Darling,* 15 Maine R. 143. Nute was directed to Clark's residence, but he neither inquired for his place of business, nor whether he had left an agent there or not. So far as appears from the evidence, the defendant resided at Milltown, and notice should have been left for him there. Notice should have been given to him in person, or left at his residence or place of business. None was left at Milltown. If he resided at New Brunswick, due diligence should have been used to ascertain his residence there. *Hill* v. *Varrell,* 3 Greenl. 233. Inquiries for that purpose should have been made of the makers and indorsers. No inquiries were made whether he had changed his residence permanently, nor whether he had an agent, nor to what place he had removed ; upon which points the plaintiff was bound to seek the necessary information, and for not doing which, he is responsible.

*Cooper,* for the plaintiff. Due diligence was proved by the evidence ; the fact was submitted to the jury, whose province it

was to determine it and they having settled it, the Court will not overrule their verdict. *Chapman* v. *Lipscomb*, 1 Johns. 294 ; Bailey on Bills, 180 ; *Bateman* v. *Joseph*, 12 East, 433.

The opinion of the Court was by

WESTON C. J. — If the notice to the defendant was properly directed, the proper mode of transmission was by the mail ; and this was seasonably resorted to for this purpose. The question of due diligence, which was properly submitted to the jury involved two considerations ; whether there was satisfactory evidence, that the residence of the defendant was at St. John, or if not, whether the plaintiff, through his agent, had made all reasonable efforts, to ascertain where it was.

There was evidence tending to show, that he had resided at Calais. It was the duty of the holder to inquire at that place, whether he was still there, or whether he had removed elsewhere, and if so, to what place. Inquiries are made, to be answered ; and upon the answers, further proceedings are to be had, if there is no reason to doubt their correctness. This is the very diligence the law requires. The inquiries and the answers are in themselves facts, to be laid before a jury, to prove such diligence. The agent for the plaintiff inquired at the house of the second indorser for the residence of Clark. A certain house was pointed out to him in answer to his inquiry. He goes there, and inquires for him, and is told that he had gone to St. John, and was there at work. He acts upon this information, and on the same day puts the letter of notice to the defendant into the postoffice at Calais, directed to him at St. John. Having succeeded in the object of his inquiries, and there being nothing to awaken suspicion, that he had not been truly informed, he had no occasion to inquire further. He was satisfied ; the jury were satisfied ; and the testimony was sufficient to satisfy any reasonable mind.

*Judgment on the verdict.*